UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ALFRED WAYNE HAWKS                                                          PLAINTIFF

v.                                                        CIVIL ACTION NO. 3:10CV-169-S

JOHN DOES, et al.                                                          DEFENDANTS

## REPORT AND RECOMMENDATION

This is a prisoner, civil rights action and is before the court on the plaintiff Alfred Wayne Hawks's *pro se* motion for preliminary injunction. Hawks, who suffers with hepatitis C viral infection, alleges the Kentucky Department of Corrections, and its employed or affiliated medical care providers, have denied him treatment with deliberate indifference to his serious medical need. The court referred this matter to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). For reasons stated below, the magistrate judge will recommend that the court grant the preliminary injunction.

## I. FINDINGS OF FACT

**A. Medical Claim**

1) Hawks is incarcerated in the Kentucky State Reformatory and is serving a life sentence. While incarcerated in 2003, Hawks was diagnosed with a hepatitis C viral infection ("HCV") and the beginning stages of liver damage, stage 1 fibrosis.[1]

2) In addition to the medical documentation attached to the amended complaint, the magistrate judge is informed of the Department of Corrections' medical management of HCV

---

[1] Am. Compl., ¶ 23.

prisoners since litigation in this judicial district styled, *Paulley v. Chandler*, 3:99cv549.[2]
Chronic hepatitis C can lead to serious or fatal liver disease, including cirrhosis, liver failure, and liver cancer. There is no cure but remission is sometimes attainable with antiviral treatment such as PEG interferon and ribavirin. This combination drug therapy is provided to eligible prisoners, under a Department of Corrections hepatitis management plan, which sets forth a treatment algorithm and criteria for ineligibility. One criterion that may exclude an inmate from combination therapy is a platelet count of less than 70,000.[3]

3) In the fall of 2009, a third liver biopsy revealed that Hawks's HCV disease had unexpectedly advanced to end-stage cirrhosis. Although a physician's progress note, dated September 24, 2009, predicts that, in this event, Hawks would be "eligible for antiviral Rx,"[4] a nurse practitioner informed Hawks, on December 23, 2009, that they could not provide the antiviral treatment because his platelets were too low.[5] Hawks was not aware that Dr. Shedlofsky, however, had two weeks earlier prescribed Neupogen injections to treat the thrombocytopenia (low platelets).[6] In the physician's note, dated December 11, 2009, Dr.

---

[2] In *Paulley*, this court found that the Department of Corrections had an unofficial policy of denying treatment to all its prisoners infected with hepatitis C virus, for financial rather than medical reasons, and entered a preliminary injunction mandating the treatment of an HCV prisoner. As a result, the Department of Corrections developed a hepatitis treatment plan for Kentucky prisoners.

[3] Am. Compl., Doc. 12-2, p. 13 of 24.

[4] Am. Compl., Doc. 12-3, at p. 12 of 17. Hawks's liver biopsy in October, 2006 showed no significant change from the first biopsy in 2003, although the report was not received until a year later, in September 2007. (Am. Compl., Doc. 12-3, p. 3 of 17.)

[5] Am. Compl., ¶ 67.

[6] Am. Compl., Doc. 12-4, p. 2 of 17.

Shedlofsky states, in part:

> This inmate's third liver biopsy on 10/9/09 showed cirrhosis, which is what we were worried about, since his platelets had been low. It is very unusual to have had two previous biopsies in 2003 and 2006 that showed only stage F1 fibrosis, and then 3 years later to have progressed to F4. ... The conundrum we face is whether we should try to treat his Hep C in the face of such a low platelet count. We usually don't treat if the platelet count is <70K. But a strategy that might work with him is to start him on Neupogen 300mcg/week or twice/wk, and see if this raises his platelet count, ... So, please check the above labs and get a quantitative HCV RNA and another CBC with diff. If the patient wants to try antiviral Rx, we can proceed after first giving him two weeks of Neupogen Rx. Let me know the results of the labs and whether the patient is willing. Thanks.

4) Hawks alleges this life-saving treatment, however, was denied at higher levels within the Department of Corrections.[7] Indeed, a medical note, signed by Roy Washington, ARNP, on January 5, 2010, states, "HCV with State F4 fibrosis request for Neupogen was denied; will check CBC in Feb 2010. Pt may have had low platelet count from bleeding hemorrhoids."[8] A subsequent medical record, dated in February 9, 2010, further indicates that Hawks had not received Neupogen injections and states, "Treatment room nurse will check at Med Central."[9]

## B. Procedural Posture

5) Hawks received the news that he was not eligible for antiviral treatment in December, 2009. He filed a prison grievance requesting this treatment in January, 2010, and in March 15, 2010, Hawks commenced this action in federal court by filing a complaint and a

---

[7] Am. Compl., ¶ 72.

[8] Am. Compl., Doc. 12-4, p. 12 of 17.

[9] Am. Compl., Doc. 12-4, p. 14 of 17. A medication list, however, describes a Neupogen injection "start date" on January 14, 2010 and "end date" on February 10, 2010, once per week for four weeks, for the treatment of thrombocytopenia and for further evaluation for HCV treatment. His platelets are described as "66 from 59" with a goal of "> 70." (Am. Compl., Doc. 12-4, p. 13 of 17.)

-3-

motion for preliminary injunction and temporary restraining order. The district judge conducted an initial screening of the complaint and allowed a § 1983 claim, among others, to proceed against the Commonwealth and certain named defendants in their official capacities. The court further ordered the Commonwealth to enter a waiver of service within 30 days and to file a response to the motion for preliminary injunction within 14 days. The court denied the motion for temporary restraining order. Lastly, the court provided that the plaintiff may amend the complaint within 30 days.

6) On March 29, 2010, the Commonwealth filed a brief in opposition to the motion for preliminary injunction. Hawks filed a reply and an amended complaint, specifically alleging suit against the named defendants in their official and individual capacities. The Department of Corrections and Dr. Scott Haas, the DOC Medical Director, entered a waiver of service on May 25, 2010. Service of process on the remaining defendants has not been executed.

7) In an order entered April 14, 2010, the magistrate judge concluded that consideration of the motion for preliminary injunction was premature until the DOC filed a responsive pleading to the complaint. The DOC had asserted two grounds in opposition to preliminary relief. First, the DOC argued that Hawks was highly unlikely to succeed on the merits, an essential element of preliminary injunctive relief, because he had failed to exhaust his administrative remedies. Second, the DOC argued the motion should fail because Hawks had not based his claim upon any medical evaluation to support of the requested treatment. Because the status of the plaintiff's prison grievance requesting medical treatment was not known, and because failure to exhaust is an affirmative defense on which the defendant bears the burden of proof, the magistrate judge ordered the DOC to file a responsive pleading to the complaint, to

supplement its response to the motion for preliminary injunction, and to state with specificity the status of the prison grievance.

8) On July 14, 2010, after some delay concerning waiver or execution of service of process, the DOC and Dr. Haas filed an answer to the amended complaint and stated that Hawks had exhausted the prison grievance process on this medical complaint, without relief. The defendants have not filed a supplemental brief in opposition to the motion for preliminary injunction.

## II. CONCLUSIONS OF LAW

9) Hawks alleges the defendants failure to administer the prescribed treatment for thrombocytopenia (low platelets) is actionable under 42 U.S.C. § 1983 as it constitutes cruel and unusual punishment under the Eighth Amendment. He requests that the court order the DOC to approve the necessary funds for acquiring and administering to Hawks the prescribed Neupogen injections immediately.

10) Section 1983 provides injunctive relief, and other remedies, if the plaintiff establishes that a prison official is depriving him of an Eighth Amendment right. *Flagg Bro's v. Brooks*, 436 U.S. 149, 155 (1978); *West v. Atkins*, 487 U.S. 42, 48 (1988). It is well settled that deliberate indifference to a prisoner's serious medical need constitutes the unnecessary and wanton of infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "This is true whether the indifference is manifested by prison doctors in their response the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.*, at 104-05. A prison official acts with "deliberate indifference" when he knows of and disregards an excess

risk to inmate health. *Terrance v. Northville Reg'l. Psych. Hosp.,* 286 F.3d 834, 843 (6th Cir. 2002).

11) In turn, the decision whether to grant preliminary injunctive relief lies within the discretion of the district court. *Summit Co. Dem. Ctr. v. Blackwell*, 388 F.3d 547, 553 (6th Cir. 2004). To prevail on a motion for preliminary injunction, the plaintiff must establish that 1) he is likely to succeed on the merits of his claim; 2) he is likely to suffer irreparable harm in the absence of preliminary relief; 3) the balance of equities tips in his favor; and 4) an injunction is in the public interest. *Winter v. Natural Resources Defense Counsel, Inc.,* 129 S.Ct. 365 (2008); *Chabad of So. Oh. & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004). The court must balance these four factors, with no single factor being given controlling weight. *Frisch's Restaurants, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985), quoting *in re DeLorean Motor Co.*, 755 F.2d 1223 (6th Cir. 1985).

12) The magistrate judge concludes the amended complaint and attached documentation satisfy these four considerations and that Hawks sufficiently demonstrates deliberate indifference to be entitled to preliminary injunctive relief.

13) The defendants argue that Hawks is not likely to succeed on the merits because he has not based his claim upon any medical evidence or evaluation that supports the requested treatment. As a result, the defendants contend, the Hawks's claim amounts to no less than a substitution of his lay opinion for the professional judgment of the physicians who are employed or contracted to oversee the hepatis treatment program and to provide treatment for inmates for the entire Kentucky prison system. The DOC relies on *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976), in which the court stated that "where the prisoner has received some medical attention and now disputes the adequacy of that treatment, the federal courts are reluctant to

second-guess prison official's medical judgments and to constitutionalize claims which sound in state tort law." The magistrate judge, however, must respectfully disagree.

14) The medical records attached to the amended complaint indisputably show that Hawks is being denied Neupogen injections directed by Dr. Shedlofsky's order on December 11, 2009. Hawks alleges the defendants refuse to provide this medication for the unlawful purpose of relieving the defendants of any duty to provide expensive, antiviral treatment.[10] The plaintiff further complains the defendants have dragged their feet in responding to the civil rights complaint, despite the risk involved to Hawks's life and the defendants' constitutional duty to provide prescribed and required life saving medical treatment.[11]

15) Hawks has attached medical records which support this aspect of his claim. Dr. Shedlofsky clearly states his intention of proceeding with antiviral treatment for Hawks "after first giving him two weeks of Neupogen RX" in order to raise his platelet count. Despite this clear physician's note, the next medical record entry shows that Neupogen injections were "never started (never provided)." In the magistrate judge's view, this information refutes the defendants' position that there is no medical evidence or evaluation to support the requested treatment.

16) Not only is there evidence, but it exists in the form of an unambiguous and uncontradicted order from a DOC physician. The defendants are otherwise silent. The defendants have submitted no supplemental pleading in opposition to the motion for preliminary injunction, despite specific direction to do so in the order of April 15, 2010. Instead, the defendants have simply clarified that one of its defenses, exhaustion of administrative remedies,

---

[10]Am. Compl., Doc. 18 at p. 3.

[11]Mot. for Ruling, Doc. 19 at p. 2.

-7-

is withdrawn. The defendants offer no medical record to refute the plaintiff's allegations or further clarify that the plaintiff's position is simply a dispute of another physician's professional judgment that Neupogen injections or other treatment, including HCV treatment, is not indicated. The magistrate judge concludes, therefore, that Hawks has carried his burden and that the DOC's failure to provide Neupogen injections and antiviral treatment is the result of deliberate indifference to his serious medical need.

17) The remaining factors further support the grant of a preliminary injunction. These medical exhibits further support Hawks's claims that he is displaying symptoms of severe HCV and end-stage cirrhosis. The DOC argues Hawks has not shown evidence that Neupogen would be more beneficial than harmful at his present stage of HCV and his low platelet count. The DOC further argues Hawks simply has failed to states a cognizable claim of acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical need. Again the magistrate judge respectfully disagrees. The physician note of Dr. Shedlofsky of December 11, 2009, contradicts this argument. The magistrate judge further finds the grant of a preliminary injunction in favor of the plaintiff would not cause substantial harm to others and that the impact of the injunction on the public interest favors granting the relief sought.

18) The court's prior rulings from the *Paully* case concerning withholding HCV treatment surely put the DOC on notice of the serious nature of these cases. The court is frankly puzzled at the incomplete response of the DOC to this case, which raises potential issues of life and death. On the record before the court, the plaintiff is plainly entitled to prompt relief.

## III. RECOMMENDATION

Accordingly, the magistrate judge recommends that the court grant the motion for preliminary injunction and enter an order compelling Neupogen injections and HCV treatment as ordered by Dr. Shedlofsky without further delay.

DATE: August 2, 2010

*[signature: James D. Moyer]*
**James D. Moyer**
**United States Magistrate Judge**

cc: Counsel of Record

**NOTICE**

Within fourteen (14) days after being served a copy of these proposed findings of fact, conclusions of law, and recommendation, any party who wishes to object must file and serve written objections, or further appeal is waived. *Thomas v. Arn*, 782 F.2d 813 (6th Cir. 1984); 28 U.S.C. § 636(b)(1)(C). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.